Mr. Millis is not a career offender, but was sentenced as one. The sentencing court designated Mr. Millis as a career offender based on two prior convictions a $50 sale of marijuana, and an Ohio aggravated assault conviction from 1992. Mr. Millis challenged his sentence under 28 U.S.C. 2241, and the district court erred in denying Mr. Millis relief and in holding that Mr. Millis did not suffer a miscarriage of justice when the sentencing judge was forced to issue a sentence for more than nine years than he sought fit. Had the sentencing judge correctly determined that Mr. Millis was not a career offender, the court would have had discretion to issue a lower sentence, would have issued a lower sentence, and Mr. Millis would be a free man today. This is a miscarriage of justice. Mr. Millis received a sentence of over 34 years for his relatively minor role in two offenses that, but for the career offender enhancement, would have been much more lenient. Based on these facts, the sentencing judge said... If I understand it, it's the 924C counts that really drove the size, the length of that prison term, and that the portion of that sentence that corresponds to the career offender guideline here on the other counts was at the bottom of the guidelines range had your offender. So it really wasn't, in fact, a career offender sentence because of the departure under old law. We would argue that it is still a career offender sentence, and there's a dispute as well as whether the guidelines range was correctly calculated at sentencing, which we discuss on page 31 on our brief. There's some dispute whether it should be 63 to 78 months or otherwise, but you're right, that 300 months of that sentence was for the 924C offenses. And so at issue of this appeal are the remaining 110 months. Mr. Olson, would you agree that the court lowered the guidelines to what the offense level would have been if he were not a career offender? Specifically, she said the court believes the defendant's career offender status overstates the seriousness of his actual criminal background, and therefore departed to an offense level of 26 in a criminal history category of 5. Judge St. Eve, if the pre-sentence report calculated that guidelines range correctly as 110 to 137 months, then yes, it did depart to the range that would have otherwise applied. But the sentencing judge also identified additional factors that would have justified departing further here. Mr. Nellis' age, he was 22 years old at the time, as compared to the co-defendant who was in his late 40s. But Mr. Olson, this is a pre-Booker sentencing, and the district court did state the age and the role in the offense, but pre-Booker departures were very, very limited. And in fact, the guidelines have a specific offender characteristics section in 5H1.1, the guidelines that were applicable back at the time that talk about age, and say that age, including youth, is not ordinarily relevant in determining whether a sentence should be outside of the applicable guideline range, and then go on to say that age plus some type of medical disability might be sufficient. So age alone, pre-Booker, I know it's different now when we look at 3553A factors, but pre-Booker, age alone really was not a basis for a district court to depart from a guideline calculation. So how do you get around that in the pre-Booker world that Mr. Nellis was sentenced in? Yes, Judge Saney, perhaps age alone might not be sufficient, but here his age goes to his minor role in the offense as well, which under the 1990s- But he got a credit under the guideline calculation, a two-level reduction for minor role, didn't he? I don't believe that's correct, Your Honor. I believe that the judge at sentencing identified the minor role and indicated that that was part of the reason why he was departing, but I don't believe that the pre-sentence report itself gave that reduction. In any case, the judge was bound by the mandatory guidelines range, and it clearly indicated that these other factors would have justified departing further. The judge understood himself to- Even if it's minor role, what, in a pre-Booker guideline sentencing scheme, other than adjusting the guidelines themselves for minor role, can you cite something that would have permitted the court to downward depart based on role in the offense? Again, very different 3553A factors, very different in a post-Booker world, but pre-Booker world, courts were extremely limited in what they could downward depart on. Your Honor, the 1993 guidelines indicate that the judge was free to impose a sentence outside the range established by the applicable guidelines if the court finds that there exists a mitigating circumstance of a kind or to a degree not adequately taken into consideration by the guidelines. And certainly, we would argue that here, the combination of Mr. Melissa's minor role, age, and the fact that the career offender enhancement overstated dramatically his criminal background certainly provide reason for departure. And the sentencing judge also thought that. The sentencing judge found that he was able to depart 152 months. Certainly, if he were starting with a range of 110 to 137 months, rather than the much higher 262 to 327 months, he could have applied the same factors and gotten to a lower range. And we know that if Mr. Melissa— That's why I'm not sure I agree with you, that in a pre-Booker world, courts' hands were pretty tied on what they could downward depart from. And the court here did downward depart on the criminal history overstating the seriousness of the criminal background. That was a legitimate reason in a pre-Booker world to downward depart. But these other factors were really not factors at that point that courts could downward depart on. Well, Your Honor, we would argue that the combination of all those factors provided the circumstances for the sentencing judge to depart further. And if the judge had discretion to depart even by 23 months, had the guidelines range been calculated correctly, had Mr. Melissa not been designated a career offender when he didn't qualify as one, then the judge would have, we would argue, had that discretion to depart by some amount. And if the court had been able to depart by 23 months, Mr. Melissa would be out of prison today. And we think that this also goes to the point about it being a miscarriage of justice. Mr. Melissa was not a career offender. And this case is really governed by the legal principle that this court applied in Narvaez, that to be wrongly sentenced as a career offender under the mandatory guidelines constitutes a miscarriage of justice. Mr. Olson, why Narvaez and not Hawkins? Judge Brennan, Hawkins is a post-Booker advisor guidelines case. And Mr. Melissa was sentenced pre-Booker. So he was sentenced under the mandatory guidelines regime. But even, Your Honor, even if Hawkins were controlling here, Mr. Melissa would still prevail because the standard set forth in Hawkins is that there needs to be actual prejudice or an injurious effect on the judgment. And certainly, receiving a sentence higher than he otherwise would have because he was wrongly labeled a career offender constituted actual prejudice. What about the label allows you to make the argument that there was a hydraulic effect such that that sentence was higher than it would have been otherwise? A couple of things, Your Honor. This court has said as much in Narvaez. This court said that it creates a legal presumption that no amount of evidence, an extenuation or mitigation could erase. And it further... Dr. Oliphant has to be taken in the context of the case. And there, the designation did affect the sentence as it did in the Brown case. That's right, Chief Judge. And we'd argue that it did here as well. The enhancement increased the starting range that the sentencing judge could begin with. And as his hands were tied by that, because it was mandatory at the time, it was limited based on the career offender enhancement. Well, let's get back into the argument that you started with, and that we started with in terms of our questions about whether this was a career offender sentence at all because of the downward departures that the judge applied. And whether there were any further legally available downward departures below that would have been available. So we've covered that ground. There is a concession by the government here that the district court expressed some skepticism about concerning the first two steps in our saving clause jurisprudence. Perhaps you could address that. Sure, Chief Judge. The government conceded repeatedly in the district court and here in its response brief that Mr. Millicent's claim was based on Mathis, which it conceded is a Supreme Court case of statutory interpretation. The district court, while your honor is correct, expressed some reservations, ultimately accepted that concession. And relatedly, because this court has found that Mathis announced a new rule, the district court also found that the government conceded the second con, that it must be based on a new rule. The government should apply here because, you know, this court in previous cases, such as Chazen and Beeson, have accepted government's procedural concessions in applying the Davenport framework. And the government provides no reason to apply a different reasoning here. We have a bit of a confusing record here on the Shepard documents, which kind of point in two directions about the plea bargain for the underlying aggravated assault offense and whether it was count two or count three. Perhaps you could address that as well. Sure, your honor. The documents in the district court record, there are three documents that could potentially be relevant. They're found in our separate appendix 48, 49, and 50. We argue that the documents found at 49 and 50 are the relevant Shepard approved documents. The discrepancy that your honor is referring to is that the copies of those documents that the government submitted to this court are different than the ones in the district court record. They seem to have, you know, some sort of, they have some handwriting and some alterations and cross off some language. So we would urge this court to, in considering those documents, to look at our separate appendix, 48, 49, and 50, rather than the documents submitted by the government. For all these reasons, we respectfully request that the court vacate Mr. Millicent's sentence and remand with instructions to conduct a resentencing. There's no other questions. I'd like to reserve the remainder of my time for rebuttal. That's fine. Mr. Simpson. Good morning, your honors, and thank you. May it please the court. I'm Scott Simpson on behalf of the United States. By my count, this is Michael Millicent's 13th collateral attack on his sentence. And we probably would not be here this time if he had been convicted after backing of 924 C convictions under one indictment. That's the true source of the petitioner's complaint here. As Chief Judge Sykes' initial question reflected, the 20 year statutory minimum for Millicent's second 924 C count in this indictment constituted about 60% of his total sentence. So Millicent's brief, I'm sorry, Millicent's beef is really with the former statute, not with how he was treated under the guidelines. He was actually treated very well under the guidelines, although they were mandatory, as we've been saying, when Millicent was convicted in 1993. The district judge essentially disregarded the probation officer's classification of Millicent as a career offender and gave him a sentence, again, on the counts not controlled by the statutory minimums of 924 C. At the bottom of what the probation office said was his mandatory guidelines range without the career offender designation. Has there been any legal basis under the guidelines for a further downward departure from that adjusted range? No, Your Honor. As I understand what the guidelines provided for at that time, the judge could not have departed down further. In looking at those three counts that were not affected by the statutory minimums, the Hobbs Act, the aiding and abetting bank robbery, and the felon in possession count, the PSR said the mandatory range for those counts with the career offender designation was 262 to 327 months. According to the PSR, the mandatory range for those offenses, again, the ones not affected by 924 C, without the career offender designation would be 137 months. But actually, if I could clarify, talk a little bit more in detail about the probation office made, that last calculation was incorrect since the probation office was using the wrong count for the offense level in calculating the range for the grouped bank robbery and felon in possession counts. And if probation had done that correctly, the mandatory guidelines range without the career offender designation would be 130 to 162 months. So what the judge actually gave him on those counts not affected by the mandatory minimum was 110 months at the bottom range that the probation office thought should apply. And fully 120 months below what actually was the bottom of the correct mandatory range, even without that enhancement. And the guidelines as they stood at that time, and given their mandatory status, offered no other legal basis for a downward departure. That's my understanding, Your Honor. My understanding is he could not have departed down further. So the question is, did he suffer a miscarriage of justice? I think that history answers that question. Obviously, that's not a miscarriage of justice to get such a low sentence based on what the guidelines were providing. In fact, this is one basis on which the Sixth Circuit affirmed the denial of one of Miller's earlier 2241 petitions, which he filed in 2017. The court said that the petitioner had not shown a miscarriage of justice, quote, given that he received the lowest possible sentence under the mandatory guidelines, close quote. So Miller's argument boils down to theorizing, to speculating that the judge might have departed even lower if the probation office had not classified him as a career offender. But that argument is contrary to this court's decision in Hawkins that we've already referred to, the decision on denial of rehearing. The thrust of the Hawkins opinion is that a miscarriage of justice does not occur based on the mere possibility that the judge might have given a lower sentence if he had not calculated an advisory guidelines range incorrectly. I could also comment a little bit on Narvaez, which Mr. Olson referred to. There are a couple of problems with relying on that decision here. First of all, as we said in our brief, Narvaez, the defendant, was both designated and sentenced as a career offender. As this court said, it's on page 627 of the Narvaez decision, quote, it is not clear that Mr. Narvaez, I'm sorry, it is now clear that Mr. Narvaez never should have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive and violent offenders, close quote. Here, Mr. Millis obviously was not subjected to that enhanced punishment. And second, another reason why we shouldn't be relying on Narvaez here, the petitioner's brief cites quotes a statement from the Narvaez decision to the effect that a defendant has a quote unquote absolute right not to stand before the judge as a career offender. That was at the very end of a paragraph near the end of the decision in a section that was simply responding to the government's arguments. Right before that absolute right comment, the court said the government is correct that Mr. Narvaez does not have an absolute right to a lower sentence. So it seems like the court's comment about absolute right was basically prompted by responding to the government's, apparently responding to the government's use of that phrase or something like it. Now, petitioner was the government correct to concede that the defendant's reliance on Mathis fulfilled the first two requirements of the savings clause because the defendant relied on Burris rather than Mathis? Well, your honor, I think it's correct that that Burris basically came out of Mathis. I think it's correct that I think we were correct to say that that Mathis permitted or facilitated Burris. We do talk about some additional issues in our brief, some more difficult issues about this court's Davenport land. Obviously, this court has held that Mathis is a new rule, quote unquote. The Sixth Circuit has held to the contrary. That's a very difficult decision, which because of the issue that I've been talking about, we don't think the court needs to address here. But as to the core of your question, Judge Brennan, as to whether Burris came from Mathis, yes, I think that was a correct concession. I could talk a little bit about the petitioners on the sentencing judge's comments. They talk about the sentencing judge, judge's comment that he would have given Millis an even lower sentence if he could have. But really, again, as reflected in Chief Judge Sykes' very first question in this argument, the judge's comments seem to have been largely prompted by the stacking of the 924C sentences. He thought the sentence was too high, but again, 60% of that sentence came from that second 924C count. During the hearing, in fact, the judge talked about how he had looked into the Sixth Circuit case law to confirm that indeed the government could stack that second 924C conviction, and he found that the case law supported that. And he went on to say, he said, if I could quote just a few sentences from the sentencing judge, this is from page five of the sentencing transcript, quote, it seems to me a strange law that you, then he hesitated, I can see if you committed one robbery and then were convicted of it and then committed another after it, that an enhancement of 20 years would be appropriate, he said. But to have it enhanced when they both came together before you were convicted seems to me to be unusual, but it seems to me the law, seems to be the law, he said. So again, that reflects that the judge saw this whole, what he saw as the excessiveness of the sentence as caused by that stacking of the second 924C count. In all of this, in light of all of this, Your Honors, the easy, the clear, the most obvious resolution of this case is to hold that there's no miscarriage of justice because the district court did not, in fact, apply the career offender guideline to the petitioner. If I could talk just briefly about one of our other arguments, and I hadn't planned to talk at all about all the many difficult Chazen-related and Davenport-related issues here. An alternative to the holding we've been talking about, that is holding that the district judge did not actually apply the career offender guideline. An alternative holding is that Millis cannot establish a miscarriage of justice because his Ohio conviction was indeed, in fact, for a crime of violence, so he was properly classified as a career offender. Just a comment on those records. As the court has observed, the court records from that Ohio conviction are somewhat unclear. And in that regard, we're relying partly on what I think of as the entry of dismissal document. That's at page 129 of the government's appendix to our brief. That's a document that in the party's briefs we refer to as the plea-related document, quote-unquote. That document is actually analogous to a charging document, which Shepard refers to, which is obviously a Shepard-approved document. In that document, in that entry of dismissal, it's simply the prosecutor saying that the defendant had pleaded guilty to count two, so the other counts were being dismissed. An indictment is clearly a Shepard-approved document. I think the court said— But it concludes with the judgment, Mr. Simpson. The judgment is convicted of count three. It is very unclear, Your Honor. And frankly, I do not know why there are two different versions of the judgment. I would point out that in looking at those two versions of the documents that the petitioners submitted and that we submitted in our appendix, there's a fax notation at the top of the documents that we submitted, and I don't know the relevance of that. I actually was not involved in the briefing of this case, so I was not involved in the copy of the judgment that we submitted with our brief has that reference to count three scratched out, and again, I don't know why that is. But taking that fact along with the fact that you have this entry of dismissal document from the prosecutor, just like an indictment, an indictment obviously isn't signed by the defendant either, and that entry of dismissal document is signed by the prosecutor indicating which count Mr. Millis had pleaded guilty to. So again, the documents are unclear, and since the petitioner bears the burden of showing that he suffered a miscarriage of justice, he can't do that here. Again, assuming the court needs to get to this issue at all, the petitioner can't do that here because at least one of the state to what the Sixth Circuit has held is a violent felony. Are the documents as they appear in the underlying court record in Ohio redacted with the names of the victims blanked out, and the name of the prosecuting attorney, and the you know, the full person of the jury, and all there's a bunch of redactions in here that I honor, I'm afraid I don't know that. If the court needs to know that, I could look into that and get back to the court with a letter. Well, I'm not sure it makes any difference to the outcome here, but it struck me as unusual. Of course, when I file documents with, for example, a signature or obviously with a birth date, as the attorney, as the filing attorney, I'll redact those things. But again, I don't know who did that, those redactions in these. It looks like it's the names of the victims that are blocked out. But again, not that it makes, but also the names of some of the all that sort of public knowledge stuff. And that doesn't make any sense to me. But again, it doesn't make any difference. So it's possible, Your Honor. Again, I always redact signatures. I think there's a practice of redacting actual signatures. Now, of course, names you wouldn't redact. But I think some of those are some signatures. Yes, that's true. All right. Thank you. Anything in conclusion? Just to summarize, Your Honor, the easiest holding here is that the petitioner cannot establish a miscarriage of justice because the district court did not apply the career of the petition. So we would urge the court to affirm. All right. Thank you. Mr. Oldham. Yes, Your Honor. The government argued that the correct range here, non-career offender range, would have been 130 to 162 months. That's incorrect. And if you look at page 15 of our brief, we explain why that's incorrect. The government, in explaining how they get to a base offense level of 20 and enhance it to 27, is the use of the weapon in the crime, which the guidelines specifically prohibited from serving as an enhancement under the guidelines range when the defendant has already been sentenced under 924C for that as a primary offense. So that's what the 1993 guidelines provide for. And so that enhancement can't, that five-level enhancement the government argues would apply, wouldn't apply. So at the very most, the non-career offender range would be 110 to 137 months, certainly not 130 to 162 months. And we would argue that it was actually, that the government's correct that the base offense level should have been 20, not 24, as it was. And that that would provide another reason why the range would have been lower. But nonetheless, on all of these points that the government raises, if there were an issue with the calculation, with the departures, the government could have appealed the downward departure at the time and chose not to. The court departed downward based on those numerous factors that we discussed. And I think that that provides explanation for the fact that the court had the ability to depart downward significantly. And if the court had started with a lower range than the 262-month range, the court would have had discretion to depart downward further. And as the sentencing judge said, he would have sentenced him to about 25 years, which is nine years less than he was sentenced. And for all those reasons, we respectfully request that the court vacate Mr. Millicent's sentence and remand with instructions to re-sentence. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under